LAURA FLOWER v. GEORGE S. KING AND ANOTHER.[1]

August 4, 1933.

No. 29,140.

[1]Reported in 250 N. W. 43.

*D. T. Collins,* for appellants.
*Gannon, Strizich & Kleffman,* for respondent.

*HOLT, Justice.*

Defendants appeal from the order denying their motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action is to recover rent, defendants having rented the second floor of a business block in Hibbing, Minnesota, from Joseph Flower, the owner. The lease was in writing and ran from January 1, 1926, to January 1, 1931. The rent was $300 per month. The action was begun by Joseph Flower, the lessor, who died subsequent to the appeal. The special administratrix of his estate has been substituted as plaintiff.

The following facts gave rise to the controversy between the parties: In 1922 Joseph Flower and wife executed a first mortgage on the premises to First National Bank of Hibbing to secure $25,200. Flower was then erecting a building on the lots, and the money was borrowed for that purpose. It was insufficient, and mechanics' liens were filed. So in the fall of 1923 the bank loaned $10,000 to Flower, and to secure payment he and his wife gave a second mortgage on the premises for that amount. At the same time and as part of the same transaction, he and his wife gave a power of attorney to L. C. Newcombe, an officer of the bank, to collect all rents from the building and pay the same upon the taxes, insurance, and the bank's two mortgages. The power contained a provision that it should not be revoked or terminated during the time the mortgages remained unpaid. Early in 1926 Flower decided to improve the building, and on the fourth of February, 1926, the bank loaned him for that purpose $15,000, to secure which it was given a third mortgage for that amount. In May, 1929, there were judgments docketed against Flower, and different parties instituted suits and garnishments against him. On May 9, 1929, Flower and wife assigned the rents coming due under the lease with defendants to the bank to expedite the payment of its three mortgages. The consideration therein stated was one dollar. The bank thereafter transferred the mortgages to a holding company organized by the officers of the bank to take over its interests in real estate, and that company in April, 1930, began foreclosing the second mortgage, the sale being made on June 4, 1930, for a sufficient amount to pay the second and third mortgages in full. On September 22, 1930, Flower served notice on Newcombe, the bank, and defendants that the power of attorney and assignment under which defendants were paying rent to Newcombe or the bank were revoked. It is for rent subsequently accruing that plaintiff recovered. There was no redemption from the foreclosure sale.

The first assignment is that the court erred in not granting judgment notwithstanding the verdict. Respondent makes the point that defendants moved too late for a directed verdict. The record shows

that at the close of the charge and before the jury was sent out counsel for defendant stated to the court that he had forgotten to make the motion at the proper time and asked for leave to make it then. The court stated: "I think the record should show that that was made as though it was made before the jury retired, and denied." Counsel for plaintiff offered no objection but left the matter to the court. We think defendants are entitled to ask for judgment notwithstanding the verdict provided plaintiff failed to establish the right to recover.

No fault is found with the amount of the verdict. But defendants insist that, irrespective of error in receiving testimony varying or contradicting the terms of the power of attorney and the assignment of the rent to the bank, the evidence is insufficient to sustain any recovery. The evidence has been carefully examined, and our opinion is that it supports the verdict under the theory of the law given to the jury. No exception to the instructions was taken either at the trial or on the motion for a new trial. No requests for instructions were proffered. The law as charged must then be held to be the law of the case. The court charged the jury that plaintiff claims:

"That both, the said power of attorney and later said assignment, were given by plaintiff herein to said Louis Newcombe and said First National Bank of Hibbing under and subject to specific agreement and understanding that neither of the mortgages mentioned in said power of attorney and in said assignment would be foreclosed by said First National Bank or its assign as long as said power of attorney or said assignment was in force and effect and the said Louis Newcombe or said First National Bank were permitted under either of said instruments, particularly said assignment, to collect said rentals."

The court also told the jury that the burden was on plaintiff to prove the agreement as claimed by him in order to recover. In his pleading plaintiff also asserted that the power of attorney was abandoned, abrogated, and superseded by the assignment of May 9, 1929. This issue was also submitted. The verdict being in favor

of plaintiff, it must be assumed that the jury found such to be the fact. That being so, it is not necessary to consider whether the power of attorney was effective to authorize the appropriation by the bank or the holding company of the rentals of the property during the redemption period. The right to collect the rent from defendants during that period must depend upon the effect of the assignment. There is nothing in the terms of the assignment stating how long it is to be in effect; but it may be presumed to be only during the unexpired term of the lease. The amount collected is to be applied upon the three mortgages, but nothing to prevent its application wholly on the third. It is not to be used for the payment of taxes, insurance, or preservation of the property. There is nothing said in respect to its application during the period of redemption or what effect foreclosure proceedings should have thereon. So, if there was any agreement with respect to these matters, it would not vary or contradict the terms of the assignment. The only consideration recited is one dollar, receipted for. This will permit evidence of the actual consideration. The actual rental was $300 a month for the balance of defendants' term. Plaintiff's evidence was that the real consideration was that neither of the three mortgages would be foreclosed if the assignment of the rent was given. Defendants by the testimony of the officers of the bank sought to show that the assignment was to protect the rent against the judgments then being entered against Flower and to frustrate proceedings instituted upon claims against him. There is certainly no contractual consideration expressed in the assignment which is contradicted or varied by the actual consideration shown. Defendants were not entitled to a directed verdict, and hence cannot have judgment notwithstanding.

It remains to be seen whether alleged errors in the reception of certain testimony warrant a new trial. The errors assigned relate to the assignment by the Flowers to the bank of the rents from defendants' lease. The terms of the assignment have already been referred to. It recites it was given for the purpose of expediting the payment of the three mortgages mentioned and the consideration

of one dollar, receipted for. It is the unilateral contract of the Flowers. The law is clear that in such a case the actual consideration may be shown. There was almost $7,000 to become due under the lease for the remainder of the term. So it is evident that the dollar was not the real consideration. There was default in the mortgages. Flower testified the bank was threatening foreclosure, but agreed not to foreclose if it obtained the assignment, and that to avert or prevent foreclosure the assignment was given. The testimony of Mr. Newcombe, who procured the assignment for the bank, tends to show that there was no legal consideration for it that it was made by the Flowers to defeat their creditors. Since this is a case where the actual consideration may be shown, full effect must be given to that consideration. Here the consideration, as found by the jury, was the bank's agreement not to foreclose any of its mortgages. It did foreclose, thus breaking its contract and releasing the Flowers from their part. Where the writing contains a contractual consideration, the actual consideration, even if shown, could not vary the former. It is enough to cite two of our late cases. Thiem v. Eckert, 165 Minn. 379, 206 N. W. 721; Gustafson v. Koehler, 177 Minn. 115, 224 N. W. 699. The assignment states no contractual consideration parted with or moving from the bank which the actual consideration proved by plaintiff varies or contradicts. The court did not err in admitting the evidence as to the actual consideration. Being rightly received, it had such bearing on the issues as the jury could find under the law of the case as given by the court.

The third proposition urged by defendants is that the power of attorney was executed upon a valuable consideration and irrevocable. We have already referred to the fact that the pleadings of plaintiff presented the issue that the power of attorney was abandoned, abrogated, and superseded by the assignment of the rents coming due under defendants' lease, that this issue was submitted, and it must be assumed that the jury found in favor of plaintiff thereon. A contract like a power of attorney can be abandoned or superseded. Gage v. Van Dusen & Co. 156 Minn. 332, 194 N. W. 769. But were it not so, we cannot see that defendants are assisted by the power of

attorney. Grant that it issued upon a valid consideration, namely, that the second mortgage would not have been accepted and the loan made unless the power of attorney was given by the Flowers to L. C. Newcombe to collect all the rent on the building and apply the same as therein stated. From the very beginning the parties departed from the provisions in the power of attorney. From one tenant paying $80 a month the rent was never collected or paid to Newcombe or the bank. The $10,000 loaned was placed in a special account in the bank, and into this same account went the $600 collected each month from the other tenants in the building. Upon this account Flower drew checks to pay taxes and insurance premiums, to be sure, and interest not only on the mortgages specified in the power but on the third mortgage given subsequently. Not only so, but out of the account was checked out several hundred dollars for other personal purposes of the Flowers. All checks had to be approved by Newcombe before being paid, and he knew that some of the money was not applied according to the terms of the power of attorney. So the jury had a basis for finding an abandonment of the same.

But aside from that, on June 4, 1930, the second mortgage was foreclosed and the premises bid in by the assignee of the bank, the holding company, for over $30,000. This paid the second mortgage in full, and the residue was applied upon and paid the third mortgage in full. The purchaser at the sale took title subject to the taxes unpaid, if any, and to the first mortgage. There being no taxes or insurance for which the mortgagors are obligated to pay, as far as the second and third mortgages are concerned, during the year of redemption, did any legal obstacle present itself to the Flowers revoking the power by the document served by them September 22, 1930? We think not. There is no evidence of any tax or insurance premium accruing or payable subsequent to that date or subsequent to June 4, 1930, and prior to the expiration of the time of redemption. Plaintiff had not surrendered possession to the mortgagee. There can be no pretense that by giving the power of attorney the mortgagors placed the mortgagee in possession. Flower

remained actually in possession and was entitled to the rents during the time of redemption, since, as above stated, he did not lose them by the assignment. And aside from taxes and insurance, we have held that the mortgagee cannot deprive the mortgagor of the benefits derived from the land during the year of redemption. Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 61 N. W. 818; Orr v. Bennett, 135 Minn. 443, 161 N. W. 165, 4 A. L. R. 1396; Fidelity-Philadelphia Tr. Co. v. West, 178 Minn. 150, 226 N. W. 406. The subject is so exhaustively treated in the West case that no further discussion is here necessary. It may be noted that after the foreclosure sale the first mortgage alone remained, so as to that there were no prior liens to keep down upon which under the power of attorney any rent collected lawfully might be applied; nor, as stated before, is there any evidence of taxes or insurance premiums falling due after the revocation of the power and prior to the expiration of the time of redemption.

The order is affirmed.

STONE, *Justice*, took no part.